IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

MICHAEL BURNETT,

        Plaintiff,

V.                                                    CIVIL ACTION NO. 3:05-0309

JO ANNE BARNHART,
Commissioner of Social Security,

        Defendant.

**<u>FINDINGS AND RECOMMENDATION</u>**

In this action, filed under the provisions of 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his application on June 12, 2003, alleging disability commencing February 15, 2000, as a consequence of spondylosis, degenerative disc disease and a bulging lumbar disc. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-five years of age and had obtained a GED. His past relevant employment experience consisted of work as a laborer. In

his decision, the administrative law judge found that plaintiff suffered from "obesity, back disorder, near-sightedness without corrective lenses, history of a crushed right hand (1999), and 25 year smoker," impairments he considered severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined that he had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.21 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. While working on February 15, 2000, plaintiff began to experience back pain and could not straighten up. He apparently sought chiropractic treatment initially and then began seeing an orthopedic surgeon, Dr. Steven Lovejoy, on April 6, 2000, although at the time of this visit his leg pain had resolved and his back pain was improving. While plaintiff has intermittently complained of pain radiating to one of his legs, reports of exams have consistently failed to indicate the presence of pain or of neurological abnormalities in the legs and only tenderness and limited range of motion in the back. A December 1, 2000, MRI was interpreted as showing disc bulging as well as degenerative changes at L5-S1 and a small herniation and degenerative change at L4-5.

In response to a questionnaire from plaintiff's employer relative to whether he could return to light duty work, Dr. Lovejoy stated on February 9, 2001, that he could not until he had

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404 Subpart P, Appendix 2, Table No. 1.

undergone a series of epidural steroid injections. By March 24, 2001, plaintiff had received these injections but reported no benefit, so Dr. Lovejoy sent him to physical therapy. After he completed therapy, plaintiff reported his leg pain had resolved. He was then sent for work hardening and Dr. Lovejoy noted he should have a permanent lifting limit of forty pounds. On October 15, 2001, after noting plaintiff had finished his work hardening program, this physician opined he had reached maximum medical improvement and told him he should request rehabilitation to find a "sedentary" type of job that required minimal lifting. He again noted that the forty pound lifting limitation should be permanent, however. Following this appointment, plaintiff did not return to see this physician until December 12, 2002, fourteen months later, and then it was for a complaint of foot pain, diagnosed as plantar fascitis. This condition apparently resolved because there is no evidence of further treatment for it. Plaintiff's next visit to Dr. Lovejoy was not until September 13, 2004, a month before the hearing. His complaint again was of back pain with "some" leg pain. Physical exam showed "mild" tenderness in the lumbar spine with normal lower extremity strength. Dr. Lovejoy indicated plaintiff needed an independent medical examination and discharged him from his care.

Dr. Shailen Mehta performed a consultative physical exam for workers' compensation on April 4, 2001. Plaintiff reported having pain mainly in his back, not his leg, and indicated he could lift fifty pounds, walk one-half mile, sit one hour and perform his own activities of daily living. Exam revealed a normal gait and positive Waddell signs for symptom exaggeration, including a discrepancy between straight leg raising in the sitting and supine positions. On examination of the back, this physician noted plaintiff's pain was "quite variable," and he felt plaintiff's behavior indicated more pain in the upper back. It was Dr. Mehta's opinion that plaintiff

did not have significant pain during the exam and that he was not yet at maximum physical improvement.

When the Commissioner sent plaintiff to Dr. Rodolfo Gobunsuy for an examination on September 3, 2003, he reported to Dr. Gobunsuy that his back pain radiated into his left leg. On exam, however, he walked steadily without a limp, had no difficulty getting up from sitting or getting on the exam table and was "comfortable" in the sitting and lying positions. There was lumbar tenderness from L4 to S1 with limited range of motion. Neurologically, there was no sign of weakness or atrophy and reflexes and pulses were considered normal. Decreased sensation was detected in both legs distally, but plaintiff had no difficulty walking on his heels and toes or standing on one leg. Dr. Gobunsuy also observed varicose veins in the lower part of plaintiff's lower extremities extending down to his ankles. He was unable to walk in tandem or to squat. This physician did not make a new diagnosis or assess plaintiff's residual functional capacity.

State agency medical advisors who reviewed the evidence expressed opinions on September 17, 2003, and October 7, 2003, that plaintiff was limited to light level work, should only occasionally climb, balance, stoop, kneel, crouch and crawl and should avoid concentrated exposure to hazards with the first examiner also concluding plaintiff should have limited exposure to vibration. Aside from the forty pound lifting limit, Dr. Lovejoy expressed no opinion on plaintiff's work capabilities. On October 14, 2004, six days before the hearing, Dr. Robert M. Holley completed a residual functional capacity assessment in which he found plaintiff limited to lifting less than ten pounds; standing/walking two to four hours per day; sitting two to four hours per day and must alternate sitting and standing every two hours; no crawling or work around moving machinery;

and, only occasional climbing, balancing, stooping, kneeling, crouching, firm grasping, handling, fingering, feeling and driving a car.

The administrative law judge, considering the entirety of the record, concluded the state agency medical advisors' assessments were the most persuasive. His own residual functional capacity findings were much more limited, however, and included an ability to perform light level work involving standing at least four hours total, one-half to one hour without interruption; no prolonged walking, only one-half hour at a time; sitting at least five to six hours, two hours without interruption; no pushing/pulling with the lower extremities; no sustained or frequent overhead work; no climbing hills or slopes or working on uneven terrain; and, no climbing high ladders or work at unprotected heights (over four feet). He found plaintiff could only occasionally climb stairs/steps/ramps, bend/stoop, twist, crouch/squat or kneel; could never crawl or work in the vicinity of heavy machinery or be exposed to excessive floor vibration; never operate mobile equipment or be exposed to jarring, jostling or jolting; and, could do no commercial driving or operation of foot (pedal) controlled equipment. Taking account of plaintiff's 1999 crush injury to his right hand,[3] the administrative law judge found he could only occasionally perform forceful "pincher" type gripping maneuvers with this hand. Further, he should not be exposed to excessive air pollutants, pulmonary irritants or allergens and should have no exposure to extreme cold or damp/humid conditions. Finally, the administrative law judge found plaintiff should be permitted to wear corrective eyeglasses as desired.

---

[3] This is his non-dominant hand, and there is no indication from the reports in the record that plaintiff has continued to require treatment or experience limitations relative to this injury.

In making these extensive findings, the administrative law judge did not give controlling weight to opinions expressed by Dr. Holley, concluding that they were inconsistent with the other evidence and supported by only minimal objective findings. The Court finds persuasive the administrative law judge's reasons for rejecting Dr. Holley's assessment, which includes plaintiff's mild clinical signs, a modest treatment regimen and conflicting reports from the other examiners. His findings on this issue and as to plaintiff's residual functional capacity are well-supported by the evidence.

While plaintiff alleged significant limitations on his activities due to pain, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that his credibility was only fair to poor. He found persuasive, in addition to the rather benign exam findings, the activities in which plaintiff reported he could engage, contradictions between his reports as to his abilities, and the significant lapses in treatment after October 2001. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of his functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of light and sedentary jobs in the national economy which he could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock

v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).  In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity.  Under such circumstances, the decision of the Commissioner should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection.  The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation.  Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: April 19, 2007

*[signature]*
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE